UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
PIKEVILLE

| | | |
|---|---|---|
| MELISSA ASHLEY MOORE, | ) | |
| | ) | |
| Plaintiff, | ) | Civil No. 11-131-ART |
| | ) | |
| v. | ) | |
| | ) | **MEMORANDUM OPINION &** |
| HIGHLANDS HOSPITAL | ) | **ORDER** |
| COPRORATION, et al., | ) | |
| | ) | |
| Defendants. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Defendants removed plaintiff Melissa Ashley Moore's action from state court, alleging that the Labor Management Relations Act and the National Labor Relations Act preempt Moore's state-law claims. But the Labor Management Relations Act does not apply because Moore does not allege that the defendants violated any labor agreement. Further, the National Labor Relations Act does not support removal jurisdiction, which means this Court has no authority to determine whether the Act preempts Moore's claims. Ultimately, it is up to the state court to determine whether Moore should have filed her claims with the National Labor Relations Board. Moore's motion to remand is granted.

## BACKGROUND

Beginning in October 2006, Defendant Highlands Hospital Corporation employed plaintiff Melissa Ashley Moore as a nurse at Highlands Regional Medical Center in Prestonsburg, Kentucky. R. 1-1 at 6; R. 8 at 1–2. While employed, Moore complained about the patient-to-nurse ratio, asserting that it affected patient safety. R. 1-1 at 6.

At some point, Moore decided old-fashioned complaints were not good enough. Moore went global.  She started a Facebook page titled "Nurses for lower patient-to-nurse ratios," which grew to 35,000 members by August 2010.  *Id*.  What Moore was doing with the site is not entirely clear.  She allegedly posted an article about lower patient-to-nurse ratios that "had to do with National Nurses United," the largest union of registered nurses, R. 8 at 3, and encouraged other nurses to join National Nurses United, R. 1-1 at 7.  Whatever she did, Moore asserts that it ruffled Highland's feathers.  In July 2010, Moore claims that the Vice President of Patient Care Services, Terresa Booher, met with Moore to let her know that "she should think about her behavior" because her actions—whether at work or at home—"reflected on the Hospital."  R. 1-1 at 7.  After this meeting, Moore feared termination and deleted the Facebook page.  *Id*.  On December 28, 2010, Defendant Cathie King, Moore's supervisor, terminated Moore, citing her substandard customer service.  R. 8 at 2.

In July 2011, Moore filed suit in Floyd County Circuit Court against Highlands, Consolidated Health Systems, Inc., Booher, and King.  R. 1-1 at 1.  She claimed retaliation for exercising her freedom of speech under the Kentucky Constitution, slander, invasion of privacy, and retaliation for making patient safety complaints in violation of Kentucky Revised Statute § 216B.165.  *Id*. at 6-11.  In August, Highlands removed the case to federal court on the grounds that Moore's claims are preempted by the National Labor Relations Act ("NLRA"), R. 1 at 2 (citing 29 U.S.C. §§ 157–158), and the Labor Management Relations Act ("LMRA"), R. 11 at 3–4 (citing 29 U.S.C. § 185).  Highlands alleges that Moore's

actions constitute "participation in union activity," R. 1 at 2, in spite of the fact that Moore is not a member of a union and did not work under a union contract.

## DISCUSSION

Highlands can remove Moore's state-court action only if Moore could have originally filed the action in federal court. *See* 28 U.S.C. § 1441(a); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987). Because diversity jurisdiction is lacking, removal can only be premised on federal-question jurisdiction. *See Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 6 (2003). As the removing party, Highlands must establish federal jurisdiction. *See* 28 U.S.C. § 1331; *Warthman v. Genoa Twp. Bd. of Trs.*, 549 F.3d 1055, 1063 (6th Cir. 2008). Highlands must demonstrate that either (1) Moore alleged a federal claim on the face of the complaint or (2) Moore alleged a state law claim that is preempted by federal law in such a way that the claim must be converted into a federal claim. *Caterpillar*, 482 U.S. at 392–93. But Highlands cannot satisfy either of these.

## I. Well-Pleaded Complaint Rule

To determine whether Moore's complaint contains a question of federal law, the Court first applies the "well-pleaded complaint rule." *Id*. at 392. Under this rule, the Court examines the allegations of the complaint and ignores potential defenses. *Anderson*, 539 U.S. at 6. Simply put, federal jurisdiction exists if a federal question is "presented on the face" of Moore's complaint. *Caterpillar*, 482 U.S. at 392. This rule recognizes that the plaintiff is "the master of the claim," and if the plaintiff chooses to bring a state law claim, that claim generally cannot be "recharacterized" as a federal claim for the purpose of removal. *Loftis v. United Parcel Serv. Inc.*, 342 F.3d 509, 515 (6th Cir. 2003). Even if the

3

plaintiff makes a "passing mention of federal law," this on its own is not enough to establish federal jurisdiction.  *Warthman*, 549 F.3d at 1063.

In this case, Moore's complaint does not even hint at a federal cause of action. Instead, the complaint is based entirely on alleged violations of the Kentucky constitution, common law, and statutes.  In fact, Moore asserts that "she and her counsel took great effort to make sure all her claims were brought under Kentucky Constitutional and Statutory Law." R. 13 at 1.  Moore could have alleged claims under the United States Constitution, but as the master of her complaint, Moore is perfectly able to "forego federal claims" in order to "secure a state forum."  *Warthman*, 549 F.3d at 1063.  Moore does not explicitly invoke or even reference the NLRA or the LMRA.   Thus, Highlands cannot establish federal jurisdiction on the face of Moore's complaint.

## II. Preemption

There is another route to federal court:   preemption.   There are two types of preemption:  express preemption and implied preemption.  *Beneficial Nat. Bank*, 539 U.S. at 8.  A state claim may be removed to federal court using express preemption if Congress expressly provides so in federal statute.  *Id.*  But the Court can quickly dismiss express preemption because neither the NLRA nor the LMRA explicitly preempt state law.

Regarding implied preemption, there are two types:  complete preemption (or field preemption) and ordinary preemption (or conflict preemption).  *See Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 540-41 (2001).  Both work similarly:  even if a plaintiff's complaint does not invoke federal law on its face, the state law claims necessarily invoke federal law either because Congress intended to "occupy the entire field" (complete/field preemption),

4

*cf. Exxon Shipping Co. v. Baker*, 554 U.S. 471, 489 (2008) (finding "no clear indication of congressional intent to occupy the entire field of pollution remedies" in the Clean Water Act), or because state law "conflicts" with federal law, making it impossible to comply with both state and federal law (ordinary/conflict preemption), *see Geier v. Am. Honda Motors Co.*, 529 U.S. 861 (2000) (finding preemption of common-law tort action by the National Traffic Motor Vehicle Safety Act of 1966).

But there is an important distinction between complete preemption and ordinary preemption with regard to federal jurisdiction. Only complete preemption supports removal; ordinary preemption does not. *Roddy v. Grand Trunk W. R.R. Inc.*, 395 F.3d 318, 323 (6th Cir. 2005). This boils down to a very simple concept: not all preempted state-law claims can be removed to federal court. *Caterpillar*, 482 U.S. at 398. Highlands asserts that the NLRA and LMRA preempt Moore's claims, but does not explain what type of preemption applies. Because complete preemption is the only type that can confer removal jurisdiction, the Court must assume that Highlands believes both the NLRA and LMRA provide complete preemption. Unfortunately for Highlands, complete preemption is very rare; it only applies when the preemptive "force of a statute is so 'extraordinary' that it 'converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Caterpillar*, 482 U.S. at 393 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65 (1987)). In fact, the Supreme Court has applied this extremely powerful doctrine to only three statutes: Section 301 of the LMRA; Section 502(a) of ERISA; and the National Bank Act, 12 U.S.C. §§ 85–86. *Beneficial Nat'l Bank*, 539 U.S. at 6-7; *see also Ohio ex rel. Skaggs v. Brunner*, 629 F.3d 527, 531 (6th Cir. 2010) (limiting application to the same three

5

statutes).  Both the Supreme Court and the Sixth Circuit have limited expansion of complete preemption, recognizing that its force "is so powerful as to displace entirely any state cause of action" and that "[a]ny such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action" in the absence of the doctrine.  *See Caterpillar*, 482 U.S. at 394 (quoting *Franchise Tax Bd. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 23 (1983)); *Tisdale v. United Ass'n of Journeymen, Local 704*, 25 F.3d 1308, 1310 (6th Cir. 1994).

## A. The LMRA Does Not Apply

Highlands's removal notice only invoked the NLRA, R. 1 at 2, but Highlands referred to the LMRA in its response to Moore's motion to remand.  R. 11 at 3–4.  Regardless, the LMRA clearly does not apply in this case because the LMRA is limited to violations of labor agreements.  The text of § 301 itself authorizes "[s]uits for violation of *contracts* between an employer and a labor organization."  29 U.S.C. § 185(a) (emphasis added).  And the purpose of § 301 is to promote consistent resolution of labor disputes by authorizing "federal courts to fashion a body of federal law for the enforcement of these collective bargaining *agreements*."  *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 403–04 (1988) (emphasis added) (quoting *Textile Workers v. Lincoln Mills*, 353 U.S. 448, 451 (1957).  As an example of its application, in *Caterpillar*, the plaintiffs were union members suing their employer over a labor dispute.  482 U.S. at 388.  The plaintiffs filed their action based solely on state law, but the employer removed the action, claiming that the LMRA preempted the state-law claims.  *Id*. at 390.  The Supreme Court remanded the case because the plaintiffs did not sue for breach of their collective bargaining agreement even though an agreement

6

was in place.  482 U.S. at 394–95.  Here, there are even fewer facts favoring preemption.

Moore is not a union member and did not work under the terms of a collective bargaining

agreement.  R. 8 at 3; R. 11 at 3.  Even if a labor agreement of some kind existed, Moore did

not base any of her claims on an alleged violation of any labor agreement.  Moore may have

openly supported National Nurses United on her Facebook page and may have encouraged

other nurses to join the union, but this does not invoke the LMRA.  Thus, the LMRA cannot

preempt Moore's state law claims.

## B. The NLRA Does Not Provide Removal Jurisdiction

In its removal notice, Highlands asserted that the Court has original jurisdiction

because Moore's claim "alleges discrimination because of her participation in union activity,

and, as such, is a claim involving alleged violations of the National Labor Relations Act."

R. 1 at 2.  Highlands does little to explain what it means other than to say that "this case

directly raises the issue of [Moore's] rights under Section 7 and 8 of the National Labor

Relations Act.  In particular, [Moore] mentions the labor union National Nurses United, she

details her concerted activities, and mentions the 35,000 members of her work-related"

Facebook page.  R. 11 at 3.

But the Court cannot proceed to decipher Highlands's allegations because it lacks

jurisdiction to do so.  As noted above, neither the Supreme Court nor the Sixth Circuit has

recognized the NLRA as completely preemptive of state law.  The Sixth Circuit faced a

similar situation in *Roddy* when the parties asked whether the Railway Labor Act completely

preempted Michigan-law claims.  *Id.* at 322.  The Sixth Circuit had not recognized the Act as

completely preemptive prior to *Roddy*, but the court still went through a painstaking analysis

to determine that it should *not* recognize the Act as completely preemptive. *Id*. at 324–26. If Highlands hoped that this Court would do a similar analysis, they are a little late. The Supreme Court already explicitly held that the NLRA does *not* completely preempt state law. *See Caterpillar*, 482 U.S. at 398 ("The fact that a defendant might ultimately prove that a plaintiff's claims are pre-empted under the NLRA does not establish that they are removable to federal court.").

Thus, Highlands can only allege ordinary preemption, which for the NLRA is known as *Garmon* preemption. In *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 244–45 (1959), the Supreme Court held that both state and federal courts generally lack original jurisdiction to determine disputes involving conduct actually or arguably prohibited by the NLRA. The Court considered it essential to the administration of the NLRA that determinations regarding the scope and effect of §§ 7 and 8 "be left in the first instance to the National Labor Relations Board." *Id*.

By invoking *Garmon* preemption as a basis for federal jurisdiction, R. 6 at 2; R. 11 at 4–5, Highlands is essentially asking the Court to retain the case so that it can dismiss it. But Highlands's argument is ill-conceived. *Garmon* preemption only strips a federal or state court of original jurisdiction; it does not confer removal jurisdiction. *See Int'l Longshoremen's Ass'n v. Davis*, 476 U.S. 380, 393 (1986) ("A claim of *Garmon* preemption is a claim that the state court has no power to adjudicate the subject matter of the case, and when a claim of *Garmon* preemption is raised, it must be considered and resolved by the state court."); *Alongi v. Ford Motor Co.*, 386 F.3d 716, 728 (6th Cir. 2004) ("[W]e have no jurisdiction to consider whether any of [of the plaintiff's claims] may be preempted by § 7

8

and § 8 of the [NLRA]; the matter is for the state courts to consider."); *see also Lattin v. Kurdziel*, 149 F.3d 1183, at *5 (6th Cir. 1998) (unpublished table decision) ("This seemingly broad-based preemption does not apply to removal jurisdiction if the case begins in state court."). If Moore had originally filed her action in federal court, then it would be up to this Court to determine whether *Garmon* preemption applies. But since the action originated in state court, whether Moore's claims should be dismissed so that she can pursue an action with the NLRB is a question for the state court to decide. *Roddy*, 395 F.3d at 326 ("Because there is no removal jurisdiction, we do not have jurisdiction to reach the question of whether Roddy's state claim is in fact preempted by federal law. . . . State courts are competent to determine whether state law has been preempted by federal law and they must be permitted to perform that function in cases brought before them, absent a Congressional intent to the contrary.").

## III. Attorney Fees

As part of a remand order, a court "may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." 28 U.S.C. § 1447(c). The Court has discretion to grant fees to the opposing party if "the removing party lacked an objectively reasonable basis for seeking removal." *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005). Highlands based removal of Moore's claims on preemption by the NLRA and LMRA. Admittedly, "unclear" would be a charitable description of preemption case law. But even a quick read of *Caterpillar* would have keyed Highlands into the fact that neither complete preemption nor ordinary preemption provides federal jurisdiction over Moore's claims. Finding cases holding that *Garmon* preemption does not provide removal

9

jurisdiction would have taken slightly more initiative, but nothing extraordinary. Still, Highlands filed its removal notice soon after Moore filed her state claims as opposed to say, a few weeks before trial. *See Gonzales v. Haydon Bros. Contracting, Inc.*, 2011 WL 2534455, at * 3 (E.D. Ky. June 27, 2011). Additionally, Moore's statement about taking "great effort" to avoid stating a federal claim indicates that there is at least some opportunity to interpret the core of her complaints as federal claims. All together, it does not appear that Highlands removed Moore's state action to "delay litigation" or to "impose additional litigation costs" on Moore. *See Brunner*, 629 F.3d at 532. The Court therefore does not award attorney fees and costs to Moore.

## CONCLUSION

Accordingly, it is **ORDERED** that Moore's motion to remand, R. 8, is **GRANTED**. Moore's request for sanctions, R. 8 at 12, is **DENIED**. This case is **REMANDED** to the **Floyd Circuit Court** and **STRICKEN** from the Court's active docket. All other pending motions are **DENIED** as moot.

This the 17th day of November, 2011.

**Signed By:**

*Amul R. Thapar*

**United States District Judge**